UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES E. LUNDEEN, SR.,                                                              Plaintiff,

v.                                                                Civil Action No. 3:15-cv-745-DJH

PRESTON P. NUNNELLEY, et al.,                                                    Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Kentucky denied Plaintiff James E. Lundeen, Sr. a license to practice medicine in the Commonwealth after learning that two other states had previously revoked or suspended his medical license. Lundeen, proceeding pro se, filed this action against Defendants Preston P. Nunnelley, Leanne Kittrell Diakov, and Michael S. Rodman of the Kentucky Board of Medical Licensure, challenging the Board's denial of Lundeen's application for a medical license. (Docket No. 1) Lundeen alleges that the Board violated his Due Process and Equal Protection rights, spoliated evidence, and violated the dormant Commerce Clause. In response, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (D.N. 10) Because Lundeen's § 1983 claims against Rodman and Nunnelley are barred by immunity and the remaining counts of the complaint do not allege plausible claims for relief, Defendants' motion to dismiss will be granted.

**I.      BACKGROUND**

**A.**

James Lundeen applied to the Kentucky Board of Medical Licensure (KBML) for a Kentucky medical license on April 30, 2014. (D.N. 1-47, PageID # 698-701) In his application, Lundeen indicated that his medical licenses from Ohio and Indiana had been revoked and

1

suspended, respectively. (D.N. 1-47, PageID # 698-740) On December 14, 2011, after initially suspending Lundeen's license, the State Medical Board of Ohio (SMBO) permanently revoked his license after concluding that Lundeen was an "immediate danger to the public health, safety, or welfare" because of his "failure to maintain minimal standards applicable to the selection or administration of drugs . . . ; departure from, or failure to conform to, minimal standards of care; and violation or conspiracy to violate Medical Board rules on utilizing prescription drugs for the treatment of intractable pain." (D.N. 1-47, PageID # 716) The SMBO specifically found that Lundeen "failed to conduct appropriate physical examinations" and "excessively and inappropriately prescribed narcotic analgesics and other drugs of abuse despite indication of possible addiction, drug abuse, or diversion in some patients," among other issues. (D.N. 1-47, PageID # 729) In addition, investigators found missing drywall, exposed insulation, exposed wires, a "mattress with no sheets," and "trash bags accumulated on the floor" in Lundeen's office in Plymouth, Ohio. (D.N. 1-47, PageID # 731) As a result of the SMBO's revocation, the Medical Licensing Board of Indiana suspended Lundeen's Indiana medical license on May 2, 2012. (D.N. 1-47, PageID # 714)

In response to Lundeen's disclosures in his KBML application, Defendant Michael S. Rodman, Executive Director of the KBML, sent Lundeen a letter on August 25, 2014, informing Lundeen that the revocation and suspension of his previous medical licenses could "serve as a legal basis for denial of [his] application" pursuant to a number of Kentucky statutes and regulations. (D.N. 1-47, PageID # 680) For example, Ky. Rev. Stat. Ann. § 311.595(17) (West 2016) provides that the KBML

> may deny application or registration for a license . . . upon proof that the licensee has . . . [h]ad his license to practice medicine . . . in any other state . . . revoked, suspended, restricted, or limited or has been subjected to other disciplinary action by the licensing authority thereof.

In the letter, Rodman added, "[Ky. Rev. Stat. Ann. §] 311.571(9) permits the Board to deny licensure without a prior evidentiary hearing upon a finding that the applicant has violated any provision of" § 311.595. (*Id.*) Finally, the letter stated that Lundeen's application would be considered at a KBML meeting on September 18, 2014, which would serve as Lundeen's "one opportunity" to address the Board. (*Id.*)

Lundeen appeared at the September meeting and was given the opportunity to respond to Board members' questions; however, he was not allowed to introduce evidence or present witnesses during the meeting. (D.N. 1, PageID # 14) The meeting was presided over by Defendant Preston Nunnelley, President and Board Member of the KBML. (D.N. 1-18, PageID # 183) In addition to Lundeen's responses during the meeting, the Board considered more than thirty pieces of evidence submitted by Lundeen prior to the meeting, including three personal reference letters, records from both the State Medical Board of Ohio and the Medical Licensing Board of Indiana, and a statement written by Lundeen, with attachments. (D.N. 1-47, 1-48, 1-49; *see also* D.N. 1-3) On September 26, 2014, the Board issued an order denying Lundeen's application for licensure, citing the SMBO's and Medical Licensing Board of Indiana's revocation and suspension of his previous licenses as grounds for the denial. (D.N. 1-42, Page ID# 622-24)

The certificate of service on the order denying Lundeen's application was signed by Defendant Leanne Diakov, who served as KBML's General Counsel. (D.N 1, Page ID# 10) The order of denial informed Lundeen that he could exercise his right to judicial review of the Board's decision by filing a petition in Jefferson Circuit Court within thirty days. (D.N. 1-42, PageID # 625) Lundeen did not file a petition with the court.

**B.**

The present action was filed on September 21, 2015. (D.N. 1) In his complaint, Lundeen alleges, pursuant to 42 U.S.C. § 1983, that (1) Nunnelley and Diakov violated his due process rights by failing to provide an evidentiary hearing and improperly considering evidence; (2) Nunnelley, Diakov, and Rodman violated his due process rights by invoking unconstitutional Kentucky statutes to govern the Board's decision-making process; and (3) Nunnelley and Diakov violated his equal qrotection rights by providing an evidentiary hearing to another doctor accused of similar misconduct. (D.N. 1) In addition, Lundeen asserts that Nunnelley and Diakov violated the dormant Commerce Clause and spoliated evidence; specifically, that they deliberately erased or failed to record portions of Lundeen's appearance at the KBML's meeting on September 18, 2014. (*Id.*, PageID # 36-37) Lundeen sued Nunnelley and Diakov in their individual capacities and Rodman in his official capacity as Executive Director of the KBML. (*Id.*, PageID # 12-13)

Lundeen seeks money damages from Nunnelley and Diakov, as well as a declaratory judgment "that the actions of Defendants Diakov and Nunnelley resulting in the denial of issuance of Lundeen's Kentucky medical license constitute a per se violation of the Dormant Commerce Clause . . . [and] a violation of the Equal Protection Clause of the Fourteenth Amendment for differential treatment." (*Id.*, PageID # 38) In addition, Lundeen requests an order "setting aside the Kentucky order for its reliance on orders of Ohio and Indiana" and "an order declaring that the Kentucky order is constitutionally defective for its reliance on certain identified Kentucky statutes which are deemed by this Court to be facially and/or 'as-applied' repugnant to the United States Constitution and permanently barring the order's enforcement and/or its effects on Lundeen's Kentucky licensure." (*Id.*)

Defendants argue that Lundeen's claims against Rodman in his official capacity are barred by the Eleventh Amendment and that the Court therefore lacks jurisdiction. (D.N. 10-1, PageID # 1282-89) Defendants also assert that Lundeen's claims against Nunnelley and Diakov in their individual capacities are barred by absolute quasi-judicial immunity. (*Id.*, PageID # 1291-92) Finally, Defendants contend that Lundeen has failed to state a claim upon which relief can be granted. (*Id.*, PageID # 1281-82, 1292-99)

## II.   ANALYSIS

### A. Lundeen's Claim Against Defendant Michael S. Rodman Is Barred by Sovereign Immunity

Lundeen asserts a § 1983 claim against Defendant Michael Rodman in his official capacity as Executive Director of KBML, alleging that Ky. Rev. Stat. Ann. § 311.595(17) and Ky. Rev. Stat. Ann. § 311.571(9) are unconstitutional because they deprive him of his due process rights. (D.N. 1, PageID # 26-30) Rodman has asserted a defense of sovereign immunity. (D.N. 10-1, PageID # 1282-84) Defendants asserting sovereign immunity may seek dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See Bellar v. City of Auburn*, No. 1:15-CV-38-GNS, 2015 WL 5299453, at *2 (W.D. Ky. Sept. 9, 2015) (citing *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013)). "[W]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, the defense is not coextensive with the limitations on judicial power in Article III. . . . [U]nlike subject-matter jurisdiction, the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity." *Id.* (internal quotation marks omitted) (quoting *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006)).

"The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985." *Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3745, 1991

WL 37824, at *2 (6th Cir. Mar. 19, 1991). Under the Eleventh Amendment, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-20 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). With respect to § 1983 claims, the Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).

A claim against a defendant in his official capacity is deemed to be a claim against the entity that the defendant represents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, Lundeen's claim against Rodman is considered to be a claim against KBML, which is a state agency. *Quatkemeyer v. Ky. Bd. of Med. Licensure*, 506 F. App'x 342, 346 (6th Cir. 2012). Rodman is therefore entitled to sovereign immunity on the official capacity § 1983 claim against him, and Lundeen's claim against Rodman will be dismissed for lack of subject matter jurisdiction.

### B. Preston Nunnelley Has Absolute Quasi-Judicial Immunity Against Lundeen's § 1983 Claims and Claims for Money Damages

Preston Nunnelley, as a member of the Kentucky Board of Medical Licensure, has absolute quasi-judicial immunity against Lundeen's § 1983 claims and demands for money damages. "Absolute immunity against suits for money damages is 'well established' for judges, and such immunity has also been extended to non-judicial officers performing 'quasi-judicial' duties." *Quatkemeyer*, 506 F. App'x at 345 (citing *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). In *Quatkemeyer*, the Sixth Circuit held that the "members of the Kentucky Board of

6

Medical Licensure exercise the requisite adjudicatory functioning for quasi-judicial immunity." *Id*. at 346. More specifically, KBML members are immune from § 1983 claims and claims for money damages relating to the Board's quasi-judicial functions, including denial of licensure applications. *Id*. at 346-48.

Here, Lundeen sued Nunnelley because of his role in KBML's denial of Lundeen's application for a medical license. He asserts a number of claims challenging the Board's decision-making process, such as denying Lundeen a "full pre-deprivation evidentiary hearing" (D.N. 1, PageID # 18), acting "without admissible evidence and in the absence of probable cause" in denying Lundeen's medical license (*id.*, PageID # 24-25), and improperly considering "foreign evidence of professional discipline from both Indiana and Ohio" (*id*., PageID # 26), among other things. Because Nunnelley was a KBML member who served an adjudicatory function, he is entitled to absolute quasi-judicial immunity on these claims. As a result, Lundeen's § 1983 claims and claims for money damages against Nunnelley will be dismissed. *See generally Quatkemeyer*, 506 F. App'x 342.

### C. Lundeen's Remaining Allegations Fail to State a Claim upon Which Relief Can Be Granted

#### 1.

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," and the Court need not accept such statements as true. *Id*. A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id*. at 679.

Although federal courts hold pro se pleadings to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "[n]either [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Consequently, this Court is "not required to conjure up allegations not pleaded or guess at the nature of an argument." *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (citing *Wells*, 891 F.2d at 594). With regard to the remaining allegations against Nunnelley and Diakov, Lundeen has failed to state plausible claims for relief.

## 2.

Lundeen's claims against Diakov consist of conclusory allegations unsupported by facts. In the "Background and Facts" section of the complaint, Diakov is mentioned by name only twice. (D.N. 1, PageID # 15)  First, Lundeen alleges that he wrote to Diakov seven times "attempting to rectify the adverse outcome" of the board meeting, but Diakov never responded. (*Id*.)  Second, Lundeen writes that he put Diakov and KBML on "litigation hold notice not to purge, erase, or destroy any files pertaining to Lundeen." (*Id*.)  Lundeen then asserts a number of general claims against "the Defendants," such as not being "permitted by the Defendants to make an introductory statement, to introduce evidence, to offer his expert witness, . . . or to offer the reports of [the expert witness] into evidence." (*Id*., PageID # 14)  In the body of his complaint, Lundeen accuses Diakov of a number of constitutional violations under § 1983, as

well as a dormant Commerce Clause violation and spoliation of evidence. (*See generally* D.N. 1) Yet Lundeen provides no further factual support to explain Diakov's involvement with his case. (*Id.*) Instead, he makes conclusory statements, such as "Defendants Diakov and Nunnelley, while in their official capacities as state actors, acting 'under color of state or commonwealth law,' deprived Lundeen of his due process rights . . . by failing to provide any evidentiary hearing . . . ." (*Id.*, PageID # 23)

Based on the facts that Lundeen has provided, the Court cannot "draw the reasonable inference that [Diakov] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It is not clear from the complaint that Diakov played any role whatsoever in Lundeen's case. Because the Court would have to conjure up facts and guess at the nature of Lundeen's argument to find a plausible claim for relief, Lundeen's allegations against Diakov cannot survive the defendants' motion to dismiss. *Brown*, 507 F. App'x at 547.

### 3.

Lundeen likewise fails to provide factual allegations in support of his claims that Nunnelley violated the dormant Commerce Clause and spoliated evidence. With respect to the dormant Commerce Clause claim, Lundeen alleges that his work as a doctor "directly impact[ed] interstate commerce," and that he has been prevented from doing this work because of his exercise of his "First Amendment right of free speech and assembly." (D.N. 1, PageID # 34-36) Lundeen's argument seems to be as follows: his First Amendment rights of freedom of speech and freedom of assembly have been violated by the "Defendants' action of refusing to issue Lundeen's Kentucky medical license" because, pursuant to the First Amendment, he has a right to provide medical care and prepare medical reports. (*Id.*, PageID # 34-35) Lundeen then claims that this alleged denial of his First Amendment rights has an effect on interstate

9

commerce and thus violates the dormant Commerce Clause. (*Id.*) Lundeen fails to assert a plausible claim for relief under either the First Amendment or the dormant Commerce Clause.

First, a physician's First Amendment rights relating to the practice of medicine are "subject to reasonable licensing and regulation by the State." *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 884 (1992). The Supreme Court has recognized that professions charged with great responsibilities must be able to ensure that those who enter the profession are qualified. *See, e.g.*, *Lowe v. S.E.C.*, 472 U.S. 181, 228 (1985) (White, J., concurring); *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 247 (1957) (Frankfurter, J., concurring). In Kentucky, the KBML serves this role by ensuring that physicians in the state are competent and capable. It does so by enforcing a number of regulations and licensing requirements for obtaining and maintaining a medical license. (D.N. 1-47, PageID # 680) According to Lundeen, KBML places limits on free speech by regulating who can hold himself out as a licensed doctor and provide medical advice and treatment to patients. (D.N. 1, PageID # 34-36) But the Board denied Lundeen's application because he did not meet the state's medical licensing requirements. (D.N. 1-42, Page ID# 622-24) Because the KBML merely subjected Lundeen to "reasonable licensing and regulation," the restrictions that have been placed on his ability to practice medicine do not violate his First Amendment rights. *See Casey*, 505 U.S. at 884.

In addition, Lundeen misinterprets the scope of the dormant Commerce Clause. "The dormant Commerce Clause is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 369 (6th Cir. 2013) (internal quotation marks omitted) (citing *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008)). The Sixth Circuit "has adopted a two-step analysis to evaluate challenges to the

10

dormant Commerce Clause." *Id*. (citing *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010)). First, the Court "must determine whether a state statute directly regulates or discriminates against interstate commerce, or whether its effect is to favor in-state economic interests over out-of-state interests." *Id.* at 369-70 (internal quotation marks omitted) (quoting *Brown–Forman,* 476 U.S. 573, 579 (1986)). "The plaintiff bears the initial burden of proof to show that the state regulation is discriminatory." *Id*. at 370. If the plaintiff is able to satisfy this burden, then "a discriminatory law is virtually *per se* invalid and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 370 (quoting *Davis*, 553 U.S. at 328). "However, if the state regulation is neither discriminatory nor extraterritorial, then the court must apply the balancing test established in *Pike* [*v. Bruce Chuch, Inc.*, 397 U.S. 137, 142 (1970)]," which provides that "a state regulation is upheld unless the burden it imposes upon interstate commerce is clearly excessive in relation to the putative local benefits." *Id*. (internal quotation marks omitted) (quoting *Int'l Dairy,* 622 F.3d at 644).

Here, Lundeen appears to be challenging Ky. Rev. Stat. Ann. § 311.595(17), because that section provided the grounds for the defendants' "unconstitutional" actions in denying his medical license "based solely on discipline allegedly reported in or by Indiana and/or Ohio." (D.N. 1, PageID # 34-36; D.N. 1-47, PageID # 680). However, Lundeen does not allege that § 311.595(17), or any other state statute, is discriminatory. Rather, Lundeen attempts to explain the impact of his medical practice on interstate commerce and then quotes various Supreme Court cases that articulate the framework for analyzing a dormant Commerce Clause claim. (D.N. 1, PageID # 34-36). However, in doing so, Lundeen is only providing "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which the

11

Supreme Court has held will "not suffice." *Iqbal*, 556 U.S. at 678. As a result, the Court need not accept such statements as true, and the Court will not proceed in the two-step *Pike* analysis because Lundeen has not alleged sufficient facts to support the discriminatory regulation requirement. *Snyder*, 735 F.3d at 370. Thus, the dormant Commerce Clause claim against Nunnelley will be dismissed. *Id*.

As to the spoliation-of-evidence claim, Lundeen alleges that Nunnelley removed dialogue or prevented the recording of Lundeen's portion of the September 2014 Board meeting. (D.N. 1, PageID # 36-37) However, he does not identify a basis in federal law for such a claim, and the Kentucky Supreme Court has declined to recognize a claim for spoliation of evidence in civil cases. *One Beacon Ins. Co. v. Broad. Dev. Grp., Inc.*, 147 Fed. App'x 535, 540 n.2 (6th Cir. 2005) ("In *Monsanto Co. v. Reed,* 950 S.W.2d 811 (Ky. 1997), a civil case, the Kentucky Supreme Court declined to create a tort claim for deliberate spoliation of evidence in civil matters.")). Instead, "[w]here the issue of destroyed or missing evidence has arisen, [the Kentucky Supreme Court has] chosen to remedy the matter through evidentiary rules and 'missing evidence' instructions." *Monsanto*, 950 S.W.2d at 815 (citing *Tinsley v. Jackson, Ky.*, 771 S.W.2d 331 (Ky. 1989); *Sanborn v. Commonwealth, Ky*., 754 S.W.2d 534 (Ky. 1988)). Federal courts likewise address spoliation through adverse-inference instructions. *See, e.g.*, *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) ("An adverse inference for evidence spoliation is appropriate . . . ."); *Adkins v. Wolever*, 554 F. 3d 650, 652-53 (6th Cir. 2009) ("A district court could impose . . . sanctions for spoliated evidence, including . . . instructing a jury that it may infer a fact based on lost or destroyed evidence.").

In any event, Lundeen's spoliation claim consists of conclusory assertions that do not satisfy the pleading requirements. The only facts Lundeen provides in support of this claim are

that he spoke at the Board meeting for "four to eight minutes," but only the "final two minutes" of his appearance were recorded.[1] (D.N. 1, PageID # 36-37) He accuses Nunnelley and Diakov of "deliberate audio recording tampering," but he does not allege that Nunnelley or Diakov had any control over the recording. (*Id.*) Because this claim lacks any legal or factual basis, it will also be dismissed.

### III. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the motion to dismiss (D.N. 10) is **GRANTED**. This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

September 26, 2016

**David J. Hale, Judge**
**United States District Court**

---

[1] Notably, an audio recording of the meeting submitted as evidence by Lundeen includes recordings of a number of people being questioned by the Board during that meeting, and most, if not all, of the recordings were truncated, suggesting that this was the Board's normal practice when recording meetings. (D.N. 1-5)